MILTON DICKER, PROSECUTOR, v. INDEPENDENT BISCUIT CO., INC., DEFENDANT.

Argued October 2, 1945—Decided April 18, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutor, *Leo Rosenblum.*

For the defendant, *Walter X. Trumbull.*

The opinion of the court was delivered by

HEHER, J. This case arises under the Workmen's Compensation Act. *R. S.* 34:15-7, *et seq.* Prosecutor is partially disabled as the result of a coronary occlusion suffered on October 26th, 1943; and the question for decision is whether the attack was idiopathic or traumatic in origin. The Compensation Bureau dismissed the petition for compensation; and the employee thereupon sued out this writ of *certiorari.* The seizure occurred beyond this state.

The Deputy Commissioner determined that the employee had not sustained the burden of proof; and we are of the same view.

These are the circumstances: The claimant was employed by defendant as a bookkeeper and office manager. On the day in question, he, his father, Julius, and his brother, Isidor, representing the defendant corporation, had a dinner conference with one Helfgodt and one Yohay at a restaurant on Sixth Avenue, in the City of New York, for the consideration of a proposal to merge defendant's business with like businesses of corporations represented by Helfgodt and Yohay, and of prices if the merger did not materialize. The claimant's dinner consisted of "soup, herring, black olives, an eclair and coffee," described by defendant's cardiologist as "an indigestible heavy meal," and by prosecutor's as a "heavy" or "sizable" meal. The subject-matter of the conference was discussed during the course of the dinner. The claimant testified that the discussion became "heated," although the conferees remained on the friendliest terms, and that sometime after he had finished dinner he "started to perspire, and then all of a sudden" he was stricken with pain in his chest and back. He was taken to his mother's home nearby, and thence to a hospital.

The Deputy Commissioner was in doubt as to whether there was a causal relationship between "the discussion and the heart attack;" and we, too, consider the evidence insufficient in this regard. The claimant's medical expert expressed the opinion that "emotional excitement" produced by the conference discussion was the cause of the occlusion. But the evidence is not convincing that there was, in fact, emotional

agitation in such degree as to have caused the heart stroke. The attack came not more than an hour after the discussion began; and the claimant, himself, said the conference "was strictly on a friendly basis," and that no ill feeling was engendered by the argument. At the time he attributed his illness to the food.

Each party introduced opinion evidence from a cardiologist. The claimant had long suffered from cardiac disease. There was general arteriosclerosis involving the coronary blood vessels, and electrocardiographic evidence of a myocardial infarction as a result of a prior coronary occlusion or thrombosis. It is admitted that, three to five weeks prior to the particular seizure, the claimant "had similar milder attacks that subsided after twenty minutes," and that he "had not been feeling well for weeks." This was a progressive disease; and an occlusion or thrombosis could result in the normal course of the disease without the stimulus of emotional excitation or the increased heart action and metabolism that ensues from "an unusually hearty and indigestible meal."

The claimant's cardiologic expert was not the attending physician. His conclusion of traumatic injury rests upon the premise of "emotional excitement," the existence of which in our view is not demonstrated by the proofs. As we have seen, the evidence is conclusive that the conferees were on friendly terms throughout; and it would be the merest speculation to hold that the discussion itself, even though carried on with vigor at times, was the inducing cause of the heart attack. The "indigestible" meal is a more likely hypothesis. But we think it much more likely that the stroke was the climax of the progressive coronary sclerosis, uninfluenced by the things done in the master's service. The proofs show that the claimant suffered another such attack on May 3d, 1944. At all events, he has not borne the burden of proof of a causal relationship between the employment and the heart failure.

There is a presumption that the occlusion was due solely to disease; and the *onus* is on the claimant to establish by evidence that the doing of the master's work was at least a contributory cause without which the stroke would not have

occurred. The burden of proof is not sustained unless the evidence is in quality sufficient to bring the tendered hypothesis within the realm of probability. The fact-finding authority may not indulge in surmise or conjecture. That the cardiac disturbance is fairly traceable to the employment must be a rational inference, *i. e.,* an inference based upon a preponderance of probabilities according to the common experience of mankind. *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533; *Schlegel* v. *H. Baron & Co.,* 130 *Id.* 611. The proofs here do not satisfy that standard. As was said in the last-cited case, disease alone will not infrequently serve as the basis of an award of compensation unless the standard of proof is rigidly applied.

And we are unable to subscribe to the claimant's view that there was a compensable accident if the occlusion was the result of accelerated heart action consequent upon the consumption of "a heavy indigestible meal," since the food was had "at a dinner conference" attended by him "in the course of his employment."

The meal was served at a public restaurant; and the food was of claimant's own choosing. If the coronary closure was the result of the strain imposed by the process of food assimilation upon a system weakened by general arteriosclerosis and arterial hypertension, it is attributable to disease and not to trauma. The condition is not the consequence of an "accident" in the statutory view. It is not the emanation of a risk reasonably incident to the master's service. It is in no sense due to the employment. There is in such circumstances an absence of causal relation between the cardiac derangement and the fulfillment of the contract of service; the employment is not a contributory proximate cause; the heart failure is not fairly traceable to a hazard of the service. Compare *Geltman* v. *Reliable Linen and Supply Co.,* 128 *N. J. L.* 443.

The writ is accordingly dismissed, but without costs.